UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USHEIL F.,

               Plaintiff,              Case No. 2:22-cv-10136
                                          District Judge Linda V. Parker
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment

(ECF No. 20), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security (Commissioner) partially granting

her application for Disability Insurance (DI) benefits. This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

amended motion for summary judgment (ECF No. 18),[1] the Commissioner's cross-motion for summary judgment (ECF No. 20), Plaintiff's reply (ECF No. 21), and the administrative record (ECF No. 15).

## A.    Background and Administrative History

On May 2, 2018, Plaintiff filed her application for disability insurance benefits (DIB), alleging that her disability began on July 26, 2017, at the age of 57. (ECF No. 15-8, PageID.433.)[2]  In her disability report, she lists depression, anxiety, panic attacks, endometriosis, osteoarthritic knees, osteoporosis, Vitamin D deficiency, HIV, TB, and high blood pressure as limiting her ability to work.  (ECF No. 15-9, PageID.481.)  Her application was initially denied on August 28, 2018. (ECF No. 15-6, PageID.257-271.)

### 1.    Initial hearing and decision

Plaintiff then requested a hearing by an Administrative Law Judge (ALJ). (ECF No. 15-7, PageID.323.)  On July 25, 2019, ALJ Patricia Carey held a hearing

---

[1] Plaintiff's amended summary judgment motion and reply brief violate E.D. Mich. Local Rule 5.1(a)(2) and (3), which require that briefs be double-spaced with 14-point font.  As the reply brief is entirely single-spaced, it also violates the page limit for reply briefs set forth at E.D. Mich. LR 7.1(d)(3).  The Undersigned read and considered both to draft this Report and Recommendation, but Plaintiff's counsel is warned that future non-conforming briefs will be stricken.

[2] In her motion, Plaintiff states that she had a prior application dated July 28, 2017, which she requested to be re-opened (ECF No. 18, PageID.1437), but does not elaborate further.

(ECF No. 15-5, PageID.202-255), and on October 30, 2019, she issued an opinion

which determined that Plaintiff was not disabled within the meaning of the Social

Security Act (ECF No. 15-6, PageID.286-307).

Plaintiff submitted a request for review of the hearing decision/order. (ECF

No. 15-7, PageID.382-389.) And on September 9, 2020, the Appeals Council

vacated ALJ Carey's decision for further evaluation of Plaintiff's mental

impairment and because:

> The non-exertional requirements of the jobs used at step 5 of the
> sequential evaluation process were inconsistent with the claimant's
> residual functional capacity. The Administrative Law Judge found
> that the claimant could perform the work of sorter (Dictionary of
> Occupational Titles (DOT) code 509.686-014) and packer (DOT code
> 920.587-018), and warehouse worker (DOT code 922.687-058)
> (Finding 10). The hearing decision residual functional capacity limits
> the claimant [to] frequent handling and fingering with the bilateral
> upper extremities, occasional crouching and stooping, never climb
> ladders ropes or scaffolds, and occasional work in conditions of
> humidity and wetness, in conditions of extreme heat or cold, or where
> vibrations are present. (Finding 5). The sorter and packer jobs
> require constant handling per the DOT. Furthermore, the packer job
> requires constant fingering and frequent exposure to extreme heat and
> other atmospheric conditions. Additionally, the warehouse worker job
> requires frequent crouching and stooping. The Administrative law
> Judge cited vocational expert testimony in finding that the claimant
> could perform these jobs. While the hearing decision did address
> several areas where the vocational expert's testimony was inconsistent
> with the DOT, the decision does not address these discrepancies
> between vocational expert testimony and the DOT. Therefore, none
> of the jobs found at step 5 are supported by substantial evidence.
> Further evaluation of the vocational expert evidence pursuant to
> Social Security Ruling 00-4p is required.

(ECF No. 15-6, PageID.308-314.)

3

## 2.   Subsequent hearing and decision

On January 14, 2021, ALJ Carey, on remand, held a hearing at which

Plaintiff and a vocational expert (VE), Mary Everest, testified.  (ECF No. 15-4,

PageID.120-164.)  ALJ Carey issued a new decision on March 25, 2021, finding

that "[t]he claimant was not disabled prior to December 9, 2020, but became

disabled on that date and has continued to be disabled through the date of [the]

decision."  (ECF No. 15-5, PageID.174-195.)  She reasoned "that beginning on

December 9, 2020, the claimant's allegations regarding her symptoms and

limitations [were] consistent with the evidence."  (ECF No. 15-5, PageID.192.)

Plaintiff submitted a request for review of the hearing decision/order, which

the Appeals Counsel denied on November 19, 2021.  (ECF No. 15-2, PageID.80-

85.)  Thus, ALJ Carey's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on January 24, 2022.  (ECF

No. 1.)

## B.   Plaintiff's Medical History

The administrative record contains approximately 800 pages of medical

records, which were available to the ALJ at the time of her March 25, 2021

decision.  (ECF Nos. 15-10-15-14, PageID.596-1400 [Exhibits 1F-18F].)  These

materials will be discussed in detail, as necessary, below.

## C.     The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since July 26, 2017, the alleged onset date.  (ECF No. 15-5,

PageID.128.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: depression, anxiety, irritable bowel disease, arthritis right knee,

osteoarthritis of the left knee, alcohol abuse, degenerative disc disease of the

lumbar spine with arthritis, arthritis of the bilateral hands, and tenosynovitis of the

foot and ankle.  (ECF No. 15-5, PageID.178.)  At **Step 3**, the ALJ found that since

the alleged onset date, Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments.  (ECF No. 15-5, PageID.178-181.)  **Between Steps 3 and 4** of the

sequential process, the ALJ evaluated Plaintiff's residual functional capacity

(RFC)[3] and determined that:

> prior to December 9, 2020, the date the claimant became disabled, the
> claimant had the residual functional capacity to perform medium work
> . . . except: She can occasionally climb ramps and stairs, never climb
> ladders ropes or scaffolds, and can occasionally stoop, kneel, crouch,
> and crawl.  She can do occasional overhead reaching with her bilateral
> upper extremities.  She is limited to no foot controls.  She is limited to
> frequent handling and fingering with the bilateral upper extremities.

---

[3] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

She can never work around hazards, such as unprotected heights or moving dangerous mechanical parts. She can occasionally operate a motor vehicle, and can occasionally work in conditions of humidity and wetness, in conditions of extreme heat or cold, or where vibrations are present. She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. She is limited to making simple work-related decisions. She is limited to responding appropriately to occasional interaction with supervisors, coworkers, and the general public. She is limited to tolerating few changes in the work setting, defi[n]ed as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained. She is limited to two additional brief bathroom breaks during the workday of no more than five minutes each while remaining on task 90% of the workday. She is limited to no tandem work.

(ECF No. 15-5, PageID.181-191.) However:

beginning on December 9, 2020, the claimant has the residual functional capacity to perform light work . . . except: She can occasionally climb ramps and stairs, never climb ladders ropes or scaffolds, and can occasionally stoop, kneel, crouch, and crawl. She can do occasional overhead reaching with her bilateral upper extremities. She is limited to no foot controls. She is limited to frequent handling and fingering with the bilateral upper extremities. She can never work around hazards, such as unprotected heights or moving dangerous mechanical parts. She can occasionally operate a motor vehicle, and can occasionally work in conditions of humidity and wetness, in conditions of extreme heat or cold, or where vibrations are present. She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. She is limited to making simple work-related decisions. She is limited to responding appropriately to occasional interaction with supervisors, coworkers, and the general public. She is limited to tolerating few changes in the work setting, defi[n]ed as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained. She is limited to two additional brief bathroom breaks during the workday of

6

no more than five minutes each while remaining on task 90% of the
workday.  She is limited to no tandem work.
(ECF No. 15-5, PageID.191-193.)  At **Step 4**, the ALJ determined that Plaintiff

was unable to perform any past relevant work.  (ECF No. 15-5, PageID.193.)  At

**Step 5**, the ALJ determined that prior to December 9, 2020, considering Plaintiff's

age, education, work experience, and RFC, there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform, such as

counter-supply worker, meat clerk, and spray-painting machine operator.  (ECF

No. 15-5, PageID.194-195.)  However, beginning on December 9, 2020, the ALJ

determined that there were no jobs that existed in the national economy that

Plaintiff could perform.  (ECF No. 15-5, PageID.195.)  The ALJ therefore

concluded that Plaintiff has been disabled pursuant to the Social Security Act

beginning December 9, 2020.  (ECF No. 15-5, PageID.195.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

7

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.   Analysis

In her amended motion for summary judgment, Plaintiff challenges the ALJ's determination that she did not meet the criteria for disability until December 9, 2020, arguing entitlement to DIB beginning July 26, 2017, her alleged onset date.  (ECF No. 18.)  Specifically, she asserts that the ALJ erred by: (1) misinterpreting diagnostic test results confirming diagnoses of osteopenia and osteoporosis, both severe impairments; (2) failing to utilize a medical expert to assist in the evaluation of this diagnostic imaging; and (3) failing to reconcile conflicts between the occupations listed by the VE at the hearing and adopted by the ALJ at Step 5, and her RFC prior to the date of disability.  (ECF No. 18, PageID.1437-1461.)

The Commissioner opposes Plaintiff's motion, arguing that Plaintiff has failed to demonstrate harmful error, and that substantial evidence supports the ALJ's decision.  (ECF No. 20, PageID.1468-1484.)  In her reply brief, amongst other arguments, Plaintiff seeks to clarify specifically how the ALJ misinterpreted the osteoporosis imaging results in an effort to argue that osteoporosis and

osteopenia should have been considered severe medically determinable impairments (MDIs).  (ECF No. 21.)

### 1.   The Court should find that Plaintiff failed to meet her burden of demonstrating harmful error at Step 2

Plaintiff asserts that the ALJ misinterpreted osteopenia and osteoporosis diagnostic imaging, and that the correct interpretation of such imaging supported a finding that both were severe impairments, and the need for a more restrictive RFC.  (ECF No. 18, PageID.1440-1442, 1453-1456; ECF No. 21, PageID.1488-1493.)

### a.   Step 2 Standard

An MDI is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1521.  "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," rather than a claimant's "statement of symptoms, a diagnosis, or a medical opinion[.]"  *Id.  See also Tolbert v. Comm'r of Soc. Sec.*, No. 11-12059, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) ("[A] diagnosis establishes a medically determinable impairment only where it is supported by objective medical evidence.").

At Step 2, Plaintiff bears the burden of proving the existence of a severe MDI. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). An impairment is considered severe if it "significantly limits your physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). In other words, the Step 2 severity analysis is only a threshold determination. Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See, e.g., Fisk v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. Indeed, "any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 822-23 (E.D. Mich. 2013) (quotation marks and citation omitted). Accordingly, "[t]he fact that some of [the plaintiff's] impairments were not deemed to be severe at step two [may be] legally irrelevant." *Anthony*, 266 F. App'x at 457.

### b.   Analysis

For context, the ALJ did not mention osteopenia or osteoporosis at all at

Step 2, failing to find it a severe *or* nonsevere impairment.  (ECF No. 15-5,

PageID.178.)  She did, however, discuss it specifically as part of her RFC analysis,

stating:

> In the initial application and at the hearing, the claimant alleged that
> she was unable to work due to the effects of depression, anxiety, panic
> attacks, endometriosis, osteoarthritis in the knees, osteoporosis,
> vitamin D deficiency, an HIV infection, TB infection, and because of
> high blood pressure.
>
> *   *   *
>
> In late November 2019, the record reflects that the claimant returned
> to the VA Medical Center with complaints of increased ankle and hip
> pains.  (Ex. 11F, p. 137).
>
> *   *   *
>
> Following the assessment, she was referred for images of the ankle
> and hip, and was recommended for physical therapy.  (*Id*., p. 130,
> 136).  The images showed that she had mild degenerative changes in
> the bilateral hips, but no evidence of fractures, dislocations, or acute
> osseous abnormalities.  The images of the claimant's ankles were also
> unremarkable and failed to show any evidence of fractures or
> degenerative changes.  (*Id*., p. 130).
>
> *   *   *
>
> The treatment notes show that the claimant underwent an osteoporosis
> examination at the VA Medical Center in March 2020.  (Ex. 11F, p.
> 97).  At the time of the assessment, she reported a history of multiple
> fractures and slow healing bones.  She also reported a history of
> kidney stones.  (*Id*., p. 97).  However, diagnostic bone scans failed to

show any evidence of abnormalities in bone density or mineralization. (*Id*., p. 99).

\* \* \*

Although there is a small gap in the treatment notes, the record reflects that the claimant underwent an additional osteoporosis evaluation in October 2020. (*Id*., p. 24). Following a clinical interview, she was referred for updated imagery of the lower extremities and lumbar spine. (Ex. 12F, p. 2). The results of the imagery showed average bone mineral density. (*Id*., p. 2-3).

(ECF No. 15-5, PageID.182, 186-188.)

Plaintiff argues that the ALJ dismissed the results of the diagnostic imaging tests referenced by cursorily concluding that they showed average mineral bone density when, in reality, they showed bone density in the osteoporotic and osteopenic range. (ECF No. 18, PageID.1440-1442, 1453-1456; ECF No. 21, PageID.1488-1493 (citing ECF No. 15-13, PageID.1045-1048, 1245-1246, 1327-1328).) Her point is well taken. Although not entirely clear from the wording cited above, one might assume that the ALJ believed the diagnostic imaging showed no evidence of osteoporosis, only "average bone mineral density." While that phraseology is used in the radiology reports for bone scan imaging performed in January 2019 and October 2020, it does not appear to be used as a blanket statement that Plaintiff had average mineral bone density, as it is followed by

specific densities and T-scores.[4]  (ECF No. 15-13, PageID.1045-1048, 1245-1246, 1327-1328.)  The January 2019 report, for example, includes the impression that Plaintiff had osteoporotic range bone mineral density in the lumbar spine, and osteopenic range for the left proximal femur.  (ECF No. 15-13, PageID.1245-1246.)  And the October 2020 report includes the same impression and states, "The 10-year probability of fracture, adjusted for TBS is 13.1% for a major osteoporotic fracture, and 3.9% for a proximal femur fracture."  (ECF No. 15-13, PageID.1327-1328.)  Notably, in the first later-vacated decision regarding Plaintiff's DIB application, ALJ Carey found osteoporosis to be one of Plaintiff's nonsevere impairments.  (ECF No. 15-6, PageID.292.)  Thus, one might conclude that the ALJ may have taken the phrase "average mineral density" out of context.

Nevertheless, even assuming error in the ALJ's interpretation of the diagnostic imaging and with her decision not to include osteoporosis or osteopenia as severe MDIs, Plaintiff has failed to carry her burden of establishing entitlement to a more restrictive RFC on this basis.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (a "claimant . . . retains the burden of proving her lack of [RFC]").  Plaintiff asserts that the subject imaging clearly established diagnoses of osteoporosis and osteopenia (ECF No. 18, PageID.1455-1456), but

---

[4] A T-score is the measurement used for bone mineral density.  *See* https://www.bonehealthandosteoporosis.org/patients/diagnosis-information/bone-density-examtesting/

14

diagnoses alone say nothing of the severity of a claimant's impairments or the

resulting functional limitations.  *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x

547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations

imposed by a condition, not the mere diagnosis of it.") (citing *Higgs*, 880 F.2d at

863).  And Plaintiff's identification of associated limitations is speculative at best.

With no citation to specific findings in the record directly related to her own

impairment, she states generally: "The condition can be painful.  Consequently, the

conditions result in functional limitations requiring the afflicted to avoid physical

activities that place stress on the skeletal system, such as lifting, pushing and

pulling, or performing activities that would risk falls and forceful or even

inadvertent physical contact with objects or other persons."  (ECF No. 18,

PageID.1455.)  This is insufficient to demonstrate the need for a more restrictive

RFC.  Further, in her reply brief, she states that her "treating physicians, the

independent consulting physician Bina Shaw, MD., and state consulting physicians

Robin Mika and Alice Rogado, MD, endorsed limitations consistent with a reduced

range of unskilled light exertion work with postural limitations (Doc 15-6, Tr. pp.

257-271, 694-706)."  (ECF No. 21, PageID.1492.)  But she fails to list those

limitations or indicate whether the doctors associated them with any osteoporosis

or osteopenia diagnosis, or to challenge the ALJ's interpretation of these opinions.

"[A] plaintiff cannot simply claim that the ALJ erred 'while leaving it up to the

Court to scour the record to support this claim.'"  *Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at \*2 (E.D. Mich. May 4, 2015) (Parker, J.) (quoting *Deguise v. Comm'r of Soc. Sec.*, No. 12–10590, 2013 WL 1189967, at \*7 (E.D. Mich. Feb. 19, 2013) (Hluchaniuk, M.J.), *adopted by* 2013 WL 1187291 (Mar. 22, 2013) (Tarnow, J.))  Nor does she challenge the ALJ's evaluation of those opinions.  Accordingly, the Court should find that no harmful error, if any, occurred at Step 2. [5]

> ### 2.      The Court should find that the ALJ did not err by failing to utilize a medical expert to evaluate and interpret the diagnostic imaging results

Plaintiff very briefly asserts that contrary to SSR 96-6p, the ALJ "erred and abused her discretion in failing to use a medical expert to assist in evaluating the medical evidentiary record particularly in the task of interpreting results of diagnostic studies and assessing their significance in establishing the relative severity of [her] osteoporosis and osteopenia[.]"  (ECF No. 18, PageID.1446, 1457; ECF No. 21, PageID.1490-1491.)  The Court should find this argument unpersuasive.

---

[5] Additionally, it appears as if she raises this argument for the first time in her reply brief, and it is therefore waived.  *See Grand Traverse Band of Ottawa and Chippewa Indians v. Blue Cross & Blue Shield of Mich.*, 391 F. Supp. 3d 706, 715 n.5 (E.D. Mich. 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)) ("Arguments raised for the first time in a reply brief are considered waived.").

Plaintiff cites SSR 96-6p, <u>which was rescinded and replaced effective March 27, 2017</u>.  An ALJ is "not required to obtain a medical expert to interpret the medical evidence related to [a claimant's] physical impairments.  In fact, the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled."  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726-27 (6th Cir. 2013) (citing 20 C.F.R. § 404.1545(a)(3) and *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).  And here, although the ALJ may have misunderstood the results of the diagnostic imaging, she did not interpret raw medical data.  Rather, she cited the findings of a radiologist who had already read and interpreted the imaging.  *See Rudd*, 531 F. App'x at 727.  Furthermore, as provided above, Plaintiff has not demonstrated entitlement to a more restrictive RFC as a result of any potential error in the ALJ's interpretation of the osteoporosis diagnostic imaging, as is her burden.  *Jordan*, 548 F.3d at 423.

> **3.      Finally, the Court should decline to remand on the basis that the ALJ failed to reconcile conflicts between Plaintiff's RFC, and the jobs cited by the VE at the hearing and adopted by the ALJ in the decision**

Lastly, Plaintiff argues that the occupations cited by the VE and adopted by the ALJ at Step 5 of her decision are classified as medium exertion and are, thus, "incompatible with the additional non-exertional limitations set forth in the ALJ's RFC finding, specifically as to occasional stooping, crouching and frequent handling and fingering."  (ECF No. 18, PageID.1459-1460.)  And she asserts that

"[t]he ALJ and VE failed to identify, address and explain the obvious conflicts referenced above as required by SSR 00-4p."  (ECF No. 18, PageID.1460-1461; ECF No. 21, PageID.1493.)

First, Plaintiff fails to fully develop her argument.  Although she asserts generally that the occupations cited by the ALJ at Step 5 are classified as medium exertion jobs and are, thus, incompatible with additional limitations in her RFC, she provides the Court no information about the specific non-exertional requirements for each, so that it may fully analyze her argument.  On this basis alone, the Court could reject her argument.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quotations and citations omitted).

A review of the requirements for each occupation in the Dictionary of Occupational Titles (DOT) demonstrates why a more developed argument is necessary to analyze this issue.  Plaintiff asserts that each is incompatible with the limitation to frequent handling and fingering in her RFC prior to the date of disability.  (ECF No. 15-5, PageID.181-182.)  But, according to the DOT, the occupations are, in fact, compatible with this limitation.  The job of counter-supply

18

worker requires only frequent handling and occasional fingering, DOT 319.687-101, 1991 WL 672772; the job of meat clerk is compatible with this limitation, as it requires frequent handling and fingering, DOT 222.684-010, 1991 WL 672129; and spray painting machine operator requires frequent handling, with fingering not present, DOT 741.685-010, 1991 WL 680248.  Plaintiff also asserts that each is incompatible with the RFC limitation to occasional stooping and crouching, but only the counter-supply worker job appears to conflict, as the DOT indicates that it requires frequent stooping.  DOT 319.687-101, 1991 WL 672772.

At Step 5, the Commissioner assumes the burden to "show a significant number of jobs in the economy that accommodate the claimant's [RFC] . . . and vocational profile."  *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316 (6th Cir. 2020) (quotations and citations omitted).  "To meet the burden, the Commissioner must prove that the claimant has the vocational qualifications to perform specific jobs and may rely on a vocational expert's testimony in response to a hypothetical question about the claimant's impairments and abilities."  *Id*.  The Sixth Circuit has "explained that the task of determining what constitutes a 'significant number' of jobs in the national economy is a difficult one and have identified the following factors that may be considered in making this determination: 'the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance

claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.'" *Id*. (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)).  Plaintiff makes no argument that the two compatible occupations – meat clerk and spray-painting machine operator – do not themselves demonstrate a significant number of jobs in the national economy that she could perform.

However, even if a conflict exists between Plaintiff's RFC and one of the occupations cited by the VE and adopted by the ALJ at Step 5, and that conflict results in an insignificant number of jobs, Plaintiff's argument of error at Step 5 is waived.  "All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict." *O'Neal*, 799 F. App'x at 317.  Here, before questioning the VE at the hearing, ALJ Carey stated, "I will assume that your testimony is based on the national economy, reflects the proportional number of jobs in the national economy and is consistent with your knowledge, education, training, experience and the DOT unless you tell me otherwise."  (ECF No. 15-4, PageID.155.)  This Court has found a similar statement sufficient to address any purported conflict. *See Hammons v. Comm'r of Soc. Sec.*, No. 21-12933, 2023 WL 2446163, at *4 (E.D. Mich. Jan. 23, 2023), *report and recommendation adopted* 2023 WL

2263856 (E.D. Mich. Feb. 28, 2023).  And regardless, such a determination need not be made because Plaintiff waived the argument as her counsel failed to cross-examine the VE at the hearing about any potential conflict or to otherwise point one out to the ALJ.  *Munger v. Comm'r of Soc. Sec.*, No. 19-12830, 2021 WL 1186494, at \*4-5 (E.D. Mich. Mar. 30, 2021) (citing *O'Neal*, 799 F. App'x at 317-318).  In any case, any error with respect to the counter-supply worker job is harmless, because the ALJ correctly found that Plaintiff could perform two other jobs, namely, meat clerk and spray-painting machine operator.

Finally, Plaintiff asserts that "the consumer clerk job as described in the DOT and the Selected Characteristics of Occupations (SCO) reference source requires the capacity for constant interaction with others and direct contact with the public[.]"  (ECF No. 18, PageID.1460.)  However, as Defendant points out (ECF No. 20, PageID.1483), the ALJ did not include that that occupation in her Step 5 findings.  Accordingly, the Court should find no error on that basis.

**F.    Conclusion**

Plaintiff has the burden of proof on statements of error.  Plaintiff has not shown legal error that would upend the ALJ's decision, which is well supported by substantial evidence.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 18), **GRANT**

Defendant's motion for summary judgment (ECF No. 20), and **AFFIRM** the

Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 22, 2023

                         Anthony P. Patti
                         UNITED STATES MAGISTRATE JUDGE